SUTTLES, tax-collector, *v.* J. B. WITHERS CIGAR COMPANY *et al.*

No. 14253. SEPTEMBER 22, 1942.

*Ralph H. Pharr, E. H. Sheats,* and *W. S. Northcutt,* for plaintiff in error.

*Benton E. Gaines, Noah J. Stone, Craighead, Dwyer & Lavender,*

*J. B. McCallum, W. O. Slate, J. C. Savage, E. L. Sterne, J. C. Murphy, F. A. Hooper Jr., Arnold S. Kaye, J. Herbert Johnson, Grigsby H. Wotton,* and *MacDougald, Troutman & Arkwright,* contra.

ATKINSON, Presiding Justice. ■ The four principal Georgia cases dealing with the orders issued by courts of equity, for the purpose of fixing a date beyond which intervenors would be barred from participating in funds being administered and distributed, are *Columbus Iron Works* v. *Sibley,* 164 *Ga.* 121 (137 S. E. 757); *Industrial Realty Co.* v. *International Reinsurance Corporation,* 183 *Ga.* 605 (189 S. E. 49); *Withers* v. *Hatcher,* 185 *Ga.* 380 (195 S. E. 183); *Gainesville National Bank* v. *Martin,* 187 *Ga.* 559 (1 S. E. 2d, 636). These decisions were rendered before the act March 24, 1939 (Ga. L. 1939, pp. 344 et seq.), entitled "An act to provide for limitation of time in which parties may intervene in any case in equity," etc. That act (§ 1) not only requires that in all equity cases wherein assets are being administered the court shall, sixty days before the trial term, enter an order entitled in the cause and addressed to all parties concerned, requiring all parties claiming an interest in said assets to intervene not later than a certain date, but the date so fixed by the court must not be less than sixty days nor more than ninety days therefrom. It is further provided that the order so passed shall be published in the manner therein pointed out. Section 2 is as follows: "Be it further enacted by the authority aforesaid, that after said order has been so passed and published, and after the expiration of the time for intervening, as fixed by the order, all parties interested in said assets shall be forever barred from intervening in the case." By the terms of section 2 the tax-collector was barred, since it declares that "all parties interested in said assets shall be forever barred from intervening in the case." Neither the fact that all parties and intervenors might be chargeable, as a matter of law, with notice that the taxes had not been paid, nor that taxes are under our laws of the highest dignity, obviated the necessity of the filing of an intervention as required by the statute. Nor does the fact that the tax-collector was not an actual party to the record take him out of the class of "parties interested" in the assets, so as to make the provision inapplicable to him.

■ It is argued that the statute does not apply to plaintiff in

error, whose claim is for taxes due to the State and the county, because a statute of limitations does not apply as against the State unless the statute which seeks to impose the limitation specifically by its terms names the sovereign. It is perhaps a sufficient answer to this contention to cite the Code, § 92-7702, as follows: "All laws in reference to a period of limitation as to ordinary executions for any purpose, or to the length of time or circumstances under which they lose their lien in whole or in part, are applicable to tax executions." The act in question provides for circumstances under which all creditors may by inaction lose their rights, including creditors holding executions. It is therefore applicable to tax executions.

■ The plaintiff in error attacks the constitutionality of the act of 1939, in that it is contrary to par. 1 of sec. 1 of art. 4 of the constitution (Code, § 2-2401), which in effect declares, among other things, that the General Assembly shall have no right to restrain or limit the right of taxation. This provision of our organic law has no relation to the right of the legislature to give legislative sanction to bar orders, and make them applicable to the State. The constitution is not violated by the enactment under challenge, even though, properly construed in the light of the Code section quoted in the preceding division, it is made applicable to a tax-collector seeking to have part of the fund applied to state and county tax executions in his hands.

■ Finally it is contended that the act violates par. 3 of sec. 1, of art. 1 of the constitution (Code, § 2-103), which declares that no person shall be deprived of life, liberty, or property, except by due process of law, in that the intervenor was not named in the bar order, had no notice of it or of the advertisement, and has never had his day in court. The judgment barring him from his right to participate in the fund in court is a judgment in rem. Judgments of that character may be provided on substitute service, such as service by publication, and do not on that account run afoul of the due-process clause. Pennoyer v. Neff, 95 U. S. 714 (24 L. ed. 565). Most of the judgments in attachment cases are based on the notice the defendant is supposed to receive by reason of the fact that his property is seized. Nearly all the judgments by the court of ordinary are rendered after service by publication. Many divorces are granted against non-residents on the same kind of serv-

ice; and in such a proceeding the court has power to award the custody of the children, if they are within the territorial jurisdiction of the State. *Hicks* v. *Hicks,* 193 *Ga.* 446 (18 S. E. 2d, 754), and cit. The act is not violative of the due-process clause.

*Judgment affirmed. All the Justices concur.*