### 37839. JOHNSON v. MAYOR & CITY COUNCIL OF THE CITY OF CARROLLTON et al.

SMITH, Justice.

Appellant, James M. Johnson, appeals from the denial of his motion to set aside the judgment entered in an equitable interpleader action. For reasons which follow, we reverse.

On November 11, 1980, William Squires was involved in a shootout with police officers at a shopping center in Carrollton. Several police cars, several nearby privately owned vehicles, and some buildings in the shopping center suffered gunshot damage, and appellant, a police officer for the City of Carrollton, was seriously wounded. Squires, wounded himself during the exchange of gunfire, was arrested. Approximately $10,000 was discovered on his person. Additional money was recovered as a result of information later obtained from Squires. All together, the City of Carrollton held $14,201.

Sometime after November 11, the city received information that the money recovered from Squires might be the fruits of a bank robbery in Mississippi. The city, noting a possible claim by the Mississippi bank and the possibility of other and conflicting claims to the fund being held by it, brought an equitable interpleader action on November 26, 1980, and deposited the $14,201 with the court. See Code Ann. § 37-1503. The city asked that all claimants be required to file any claim they might have to the fund. Squires and the hospital in which he was a patient were both personally served.

Squires subsequently escaped. He was recaptured in Florida, where he is now serving time for offenses committed there. Squires never answered or filed any claim to the money. The hospital and three related groups, an orthopedic clinic, a radiological clinic, and an anaesthesia association, filed claims totalling $8,195.85 for medical treatment of Squires. The city claimed in excess of $6,000 for the repair of its police cars, attorney fees and investigative costs leading to Squires' recapture.

On January 10, 1981, the city filed an additional pleading reciting the claims filed thus far with the court and admitting that it had "knowledge of the claim of [appellant] for damages as a result of

the gunshot wound . . . inflicted . . . by defendant Squires, which . . . will . . . result in possible permanent injuries." The city asked that a deadline be set for the filing of claims and that notice of the deadline be published twice a month for two months. See Code Ann. § 37-410.[1] The court set March 23, 1981 as the deadline and ordered that notice of the deadline be published as the city had requested.

On March 25, 1981, a final judgment was filed directing the clerk of the court to pay $8,195.85 to the hospital, the two clinics and the anaesthesia association; to retain $76 for court costs; and to pay the remainder of the fund to the City of Carrollton. Appellant read an article about the disbursement in the next day's paper. On March 31, 1981, he filed a motion to set aside, motion for new trial and motion to intervene, contending primarily that the provisions of Code Ann. § 37-410 violate due process.

It was shown at the hearing on appellant's motions 1) that appellant's whereabouts were known to the city; 2) that appellant was, at all times during the pendency of the interpleader proceedings, within the State of Georgia; 3) that appellant had personal knowledge of the pending action and the need to file a claim, but had no knowledge of the March 23 deadline; and 4) that the fund had already been disbursed, pursuant to the final judgment, when appellant first learned of the deadline by reading the article in the paper.

The trial court overruled appellant's challenge to the constitutionality of Code Ann. § 37-410 and denied all of his motions, concluding that since the fund was already disbursed, the matter was moot.

1. In response to appellant's constitutional challenge to Code Ann. § 37-410, the city asserts that the issue has already been decided by this court in *Suttles v. J. B. Withers Cigar Co.,* 194 Ga. 617 (22 SE2d 129) (1942). In Division 4 of that opinion, this court stated: "Finally it is contended that the act violates par. 3 of sec. 1 of art. 1 of the constitution (Code § 2-103), which declares that no person shall be deprived of life, liberty, or property, except by due process of law, in that the intervenor was not named in the bar order, had no notice of it or of the advertisement, and has never had his day in court. The judgment barring him from his right to participate in the fund in court is a judgment *in rem.* Judgments of that character may be

---

[1] Code Ann. § 37-410 provides for service by publication, in equity cases, upon possible claimants to a fund being administered, marshalled, or otherwise disposed of by the court. It bars the claims of all parties not intervening within a period of time set by the court. *Cohen v. McCandless,* 202 Ga. 231 (42 SE2d 739) (1947); *Buford Commercial Bank v. Luker,* 126 Ga. App. 586 (191 SE2d 489) (1972).

provided on substitute service, such as service by publication, and do not on that account run afoul of the due-process clause."

More recently, in Mullane v. Central Hanover Bank &c. Co., 339 U. S. 306, 312 (70 SC 652, 94 LE 865) (1950), the U. S. Supreme Court stated that "[w]ithout disparaging the usefulness of distinctions between actions *in rem* and those *in personam* in many branches of law, or on other issues, or the reasoning which underlies them, we do not rest the power of the State to resort to constructive service in this proceeding upon how its courts or this Court may regard this historical antithesis." Rather, the Court held, regardless of the type of action, due process requires that a chosen method of service be reasonably certain to inform those affected. Where conditions do not permit such notice, the method chosen must not be substantially less likely to inform than other feasible and customary substitutes. Although the court noted the unreliability of notice by publication as a means of acquainting interested parties that their rights are before a court, it also recognized that, in cases of persons missing or unknown, service by publication might be all the situation permitted and lack of personal service would not constitutionally bar a final decree foreclosing the rights of such persons. However, "[e]xceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties." Id. at 318.

Appellant in this case was a known claimant who was present in this state and whose whereabouts were known. Notice by publication was not reasonably calculated to apprise him of the pending action or of the deadline for filing a claim. His claim was barred by the judgment. We hold that Code Ann. § 37-410, insofar as it purports to allow termination of claims after service by publication on known claimants whose whereabouts are known and who are present within the state, violates due process. *Suttles v. J. B. Withers Cigar Co.,* supra, to the extent that it holds to the contrary, is hereby overruled.

2. Under Federal Rule of Civil Procedure 60 (b)(4), "a judgment is not void merely because it is erroneous, but only if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." In re Four Seasons Securities Laws Litigation, 502 F2d 834, 842 (Tenth Cir. 1974). The term "void," as used in CPA § 60 (Code Ann. § 81A-160), has been more broadly construed (see *Canal Ins. Co. v. Cambron,* 240 Ga 708 (242 SE2d 32) (1978); *Wasden v. Rusco Industries,* 233 Ga. 439 (211 SE2d 733) (1975)). Consistent with federal authority, we now hold that a judgment is void if the court which rendered it acted in a manner materially inconsistent with due process.

3. Generally, a motion to set aside "must be predicated upon

some nonamendable defect which does appear on the face of the record or pleadings . . ." CPA § 60 (d). *Wasden v. Rusco Industries,* supra at 444. Although the record in the interpleader action shows on its face that appellant was a known claimant, it does not show that his whereabouts were known to the city or that he was subject to the court's jurisdiction during the pendency of the case. These matters were shown during the hearing on appellant's motions. Therefore, the due process violation does not affirmatively appear on the face of the record.

CPA § 60 (d), however, contains a specific exception to the "face of the record or pleadings" requirement: "[A] motion to set aside shall also lie to attack a judgment based upon lack of jurisdiction over the person or subject matter, regardless of whether such lack of jurisdiction appears on the face of the record or pleadings." While the due process violation in the instant case is not, technically speaking, a "lack of jurisdiction over the person," it presents a similar evil — appellant's rights have been determined without any reasonable effort having been made to afford him an opportunity to be heard.

"Interpleader is a valuable device to enable the resolution of a many sided dispute within a single proceeding. The stakeholder is freed from the vexation of multiple lawsuits and the claimants are benefited in that conflicting claims are expeditiously resolved in one forum. [Cits.]" Companion Life Ins. Co. v. Schaffer, 442 FSupp. 826, 830 (S. D. N. Y. 1977); 7 Wright and Miller, Federal Practice and Procedure § 1703 at 366.[2] However, it is apparent in this case that the city was trying to cut off claims, not allow possible claims to be litigated.[3]

We hold that the due process violation in this case is tantamount to a "lack of jurisdiction over the person" for purposes of CPA § 60 (d) and could thus properly be raised in a motion to set aside despite the fact that the violation does not appear on the face of the record. Appellant, whose claim was barred by the judgment, clearly had a material interest in having the judgment set aside, and we conclude

---

[2] Interpleader under Rule 22 of the Federal Rules of Civil Procedure, worded almost identically to interpleader under CPA § 22 (Code Ann. § 81A-122), has been used in the federal courts in cases involving cash found on a criminal defendant where rival claimants contend the money is theirs. See, e.g., United States v. Central National Bank, 429 F2d 5 (8th Cir. 1970).

[3] Had the city proceeded with an interpleader under CPA § 22, the service provisions of Code Ann. § 37-410 would not have been available. We note that none of the four "classic" requirements of a strict bill of interpleader under Code Ann. § 37-1503 have been met in this case. See, *Almand v. Reese,* 209 Ga. 138, 142 (71 SE2d 223) (1952).

the trial court erred in failing to do so.[4]

4. Appellees contend this case is moot because appellant's claim is unliquidated and because the fund has already been distributed. We disagree.

Even assuming the case would have been moot had all the funds been distributed to third parties, at least half the fund was returned to the plaintiff in the interpleader, the city. Moreover, under Code Ann. § 77-309 (e), it was the city's responsibility to pay all medical and hospital expenses for a prisoner in its custody. By using the fund to pay these expenses, the city, in effect, appropriated the entire fund to itself.

Nor is the case moot because appellant's claim is unliquidated. The fact that one's claim is unliquidated is not necessarily a bar to participation in an interpleader. State Farm Fire & Cas. Co. v. Tashire, 386 U. S. 523 (87 SC 1199, 18 LE2d 270) (1967).

*Judgment reversed. All the Justices concur, except Hill, P. J., Gregory and Weltner, JJ., who concur specially and Jordan, C. J., and Marshall, J., who dissent.*

DECIDED MARCH 11, 1982.

*Word, Cook & Word, Gerald P. Word,* for appellant.
*William J. Wiggins, J. Thomas Vance,* for appellees.

GREGORY, Justice, concurring specially.

There are two types of interpleader available in this state; that provided by CPA § 22 (Code Ann. § 81A-122), and that provided by Code Ann. § 37-1503. One is not entitled to proceed under the latter unless four requirements are met: "(1) The same thing, debt, or duty must be claimed by both or all of the parties against whom the relief is demanded; (2) all their adverse titles or claims must be dependent, or be derived, from a common source; (3) the plaintiff must not have or claim any interest in the subject matter; (4) the plaintiff must have incurred no independent liability to either of the claimants, but must

---

[4] We have held that a judgment void for causes not appearing on its face may be attacked only by parties to the judgment or their privies, *Wasden v. Rusco Industries,* supra, except as to independent proceedings in equity under CPA § 60 (e). *Canal Ins. Co. v. Cambron,* supra. Although appellant was not a named party to the interpleader, he was one of the "parties interested" in the assets whose claim is now *barred* by the judgment. *Cohen v. McCandless,* supra, n. 1. Under the circumstances presented, the mere fact that appellant was not named in the judgment does not deprive him of the right to attack it.

stand indifferent between them merely as a stakeholder." *Almand v. Reese,* 209 Ga. 138, 142 (71 SE2d 223).

None of the above requirements were met by the City in this case and it should not have been allowed to proceed under Code Ann. § 37-1503.[1] Of particular importance are the last two requirements. The City failed to meet requirement (3) above because it was not a disinterested stakeholder — it had its own claim to the fund. The City did not meet requirement (4) because under Code Ann. § 77-309 (e), the City was independently liable to the hospital.

Because the City had its own claim to the fund, it was obviously in its interest to restrict the number of claimants competing for the fund. Only the hospital, to whom the City was independently liable anyway, was personally served in this case. The difference between equitable interpleader and rule interpleader is that under the former, because of Code Ann. § 37-410, non-parties are bound by the judgment.

Appellant Johnson was in the hospital for several months following the shootout. He then returned home for a period of convalescence and apparently had not yet returned to work at the time the fund was distributed. It was following his return from the hospital and during his convalescence that appellant talked with the city attorney and discovered the pendency of the proceeding. He was not, however, told of the deadline for filing a claim. Shortly before the fund was distributed, appellant talked to an attorney about submitting a claim. However, before anything could be filed on his behalf, a final judgment was entered barring his claim.

The validity of Johnson's claim is not an issue in this case. What was improper here was that although the City was aware of his claim (it said so in its pleadings), appellant was cut off without having a reasonable opportunity to present his claim on its merits.[2]

As I view the majority opinion, its holding is very limited. It will not preclude service by publication, nor defeat the purpose of Code Ann. § 37-410 which is to allow claims to money or property in the hands of the court to be "finally closed, rights fixed, and distribution of the assets made." *Cohen v. McCandless,* 202 Ga. 231, 235 (42 SE2d 739) (1947). The facts of this case, however, require reversal.

---

[1] Nor would a bill in the nature of interpleader have been proper. Such a bill may be used by one only when there is an independent basis for equitable jurisdiction. *Campbell v. Trust Co. of Ga.,* 197 Ga. 37 (28 SE2d 471) (1943).

[2] I note also that insofar as we can tell from the record, the bank in Mississippi who claimed to have been robbed by Squires was not informed of this proceeding.

WELTNER, Justice, concurring specially.

I concur in the judgment for the reason that the City of Carrollton acknowledged through pleadings that it had knowledge of the claim of Johnson for damages as a result of the gunshot wound inflicted by Squires. For that reason, a failure to provide to Johnson the same notice (personal service) that it gave to the gunman and the hospital should be viewed as a fatal defect to the bar order.

Manifestly, the law must provide some reasonable means of determining ownership of property acquired in circumstances similar to those of this case, and it would be unreasonable to require personal service upon every potential claimant. Here, however, it is undisputed that the City knew of Johnson's claim, the seriousness of it, the circumstances surrounding it, and where he might be served.

I am authorized to state that Presiding Justice Hill joins in this special concurrence.